VERMONT SUPERIOR COURT
Franklin Unit
17 Church Street
St. Albans, VT 05478
802-524-7993
www.vermontjudiciary.org



CIVIL DIVISION
No. 22-CV-01897

---

**Estate of Kyle LaBelle et al. v. Village of Swanton**

---

### ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion for summary judgment filed by Defendant, the Village of Swanton ("Defendant"). The Estate of Kyle LaBelle, administered by Jamie LaBelle, filed this lawsuit against the Village of Swanton, alleging that the Swanton Village Police Department ("SVPD") was negligent and that this negligence caused the death of Kyle LaBelle.

For the reasons explained below, the Court grants the motion for summary judgment.

### I. Undisputed Material Facts

The core of this motion for summary judgment is a legal dispute. "Plaintiffs do not dispute any of Defendant's alleged undisputed material facts to support its Motion for Summary Judgment." See Plfs' Response to Def. Statement of Undisputed Material Facts (filed 3/6/2026). The Court, in turn, finds the following facts undisputed.

This is a tragic case about the unnecessary death of a son, husband and father to three young children. On June 5, 2020, James Mulholland shot and killed Kyle LaBelle following a confrontation in front of Mr. LaBelle's home on Second Street in the Village of Swanton. Def's. Statement of Undisputed Material Facts ("SUMF"), ¶ 1 (filed 1/15/2026). Their encounter was recorded by various cameras. SUMF ¶ 3

Mr. Mulholland, his girlfriend, and a friend were walking down Second Street past Mr. LaBelle's house when Mr. LaBelle's dog approached them; after a brief exchange, the three continued walking, but Mr. LaBelle called after them, and the parties stopped at his driveway. SUMF ¶¶ 5–6. Mr. LaBelle walked into the street and shoved Mr. Mulholland, then shoved him a second time. SUMF ¶ 6. Mr. Mulholland was six inches taller than Mr. Labelle and 100 pounds heavier than him. Pl. SUMF, ¶ 24

Over the next several minutes, Mr. Mulholland attempted to walk away on multiple occasions, but each time turned back to continue the verbal exchange. SUMF ¶¶ 7–8. Mr. Mulholland eventually said, "I'll let you know right now if you threaten to kill me again I'll put you six feet under," to which Mr. LaBelle responded, "right here," and began walking toward Mr. Mulholland. SUMF ¶ 8. Mr. Mulholland drew a Ruger SR22 pistol from his hip and, over approximately three seconds, fired the shots that killed Mr. LaBelle. SUMF ¶¶ 9–10. The entire

encounter, from the time the parties first came into view of one another to the shooting, lasted approximately four minutes and thirty seconds. SUMF ¶ 12.

Prior to the incident, Mr. LaBelle and Mr. Mulholland did not have a relationship, and no threats were known to have been made by either of them against the other. SUMF ¶¶ 13–14. Mr. Mulholland did not even know Mr. LaBelle's name. SUMF ¶ 13.

Before the shooting, Mr. Mulholland had several encounters with SVPD in which he allegedly threatened violence against others. SUMF ¶¶ 24–42. The first incident in 2018 involved Mr. Mulholland making alleged threats to shoot someone. Officers determined Mr. Mulholland did not have a gun at the time and the prosecution was declined. SUMF ¶ 26. The second involved an assault by Mr. Mulholland and two others – officers issued a citation to Mr. Mulholland, but the charges were eventually dismissed. SUMF ¶ 27.

In March 2019, SVPD seized Mr. Mulholland's firearm in relation to an investigation into a firearm discharged into his ceiling. SUMF ¶ 28. In connections with this incident, Sgt. Chad Parah of SVPD suggested to Deputy State's Attorney Diane Wheeler that the State's Attorney's Office pursue some form of restriction on Mr. Mulholland's possession of a firearm due to his history and self-described low IQ. SUMF ¶¶ 28–30. The State's Attorney's Office declined to prosecute the case, and the seized firearm was returned to Mr. Mulholland on October 1, 2019. SUMF ¶¶ 31–32. The State's Attorney's Office did not seek to restrict Mr. Mulholland's possession of firearms. SUMF ¶ 31.

On November 25, 2019, a temporary relief from abuse order was served on Mr. Mulholland, prohibiting him from possessing firearms. SUMF ¶ 34. Officers seized a BB gun, and Mr. Mulholland informed them that his Northwestern Counseling & Support Services worker had taken custody of his Glock 9mm because Mr. Mulholland had been threatening self-harm. SUMF ¶ 34. On December 1, 2019, Mr. Mulholland reported that his brother had possession of the Glock. SUMF ¶ 34. On December 2, 2019, Officer Gagne served Mr. Mulholland with a final relief from abuse order that prohibited firearms for one year. SUMF ¶ 36. Following a further hearing on December 16, 2019, the court issued a revised final order that reduced the term to three months (expiring March 16, 2020) and was silent as to firearm restrictions. SUMF ¶ 37.

On January 2, 2020, SVPD responded to an incident involving Mr. Mulholland and another person – no charges were brought. SUMF ¶ 38. Later in January, officers received a call that Mr. Mulholland was possibly suicidal. SUMF ¶ 39. He was transported to Northwest Medical Center for a mental evaluation. SUMF ¶ 40.

On April 7, 2020, after the expiration of the relief from abuse order, Mr. Mulholland purchased the Ruger SR22 pistol later used in the shooting from a federally licensed firearms dealer in Swanton. SUMF ¶ 2. SVPD was not aware of that purchase. SUMF ¶¶ 23, 44.

On May 2, 2020, Mr. Mulholland's neighbor contacted police after Mr. Mulholland threatened her. SUMF ¶ 42. She refused to press charges and SVPD recommended she apply

for a no-stalking order which she eventually did. SUMF ¶¶ 42, 45. A court granted a temporary order, but she did not request a firearm restriction, and it did not contain one. SUMF ¶ 47.

On May 14, 2020, approximately three weeks before the shooting, SVPD seized a different firearm (a Smith & Wesson 9mm Shield pistol) from Mr. Mulholland during an investigation into an unrelated altercation; that firearm remained in SVPD evidence at the time of the shooting and was, to the officers' knowledge, Mr. Mulholland's only firearm. SUMF ¶¶ 22–23, 43–44.

Chief Leonard Stell testified that at the time of the shooting, he "did not have a working knowledge of the Red Flag Law" because the Vermont Police Academy had not released any training on it. SUMF ¶ 52. He further testified that the Franklin County State's Attorney had informed law enforcement that the ERPO statute "was something that they would deal with." SUMF ¶ 52.

Plaintiff contends that, had SVPD relayed the information it had on Mr. Mulholland to the State's Attorney with a supporting affidavit, the requirements for the State's Attorney to petition for an extreme risk protection order ("ERPO") under 13 V.S.A. § 4053 could have been met. See Pl.'s Ex. 5 (filed 3/6/2026).

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994).

A motion for summary judgment must be accompanied by a statement listing the undisputed material facts that support the motion. The non-moving party then may dispute those facts and additionally "file a separate and concise statement of additional material facts." V.R.C.P. 56(c)(2). The moving party is then required to respond to the additional statement of facts to explain why they are not disputed or not material.

Parties must support all facts presented by admissible evidence, and the Court will disregard conclusory facts and conclusions of law. *H & E Equipment Services, Inc. v. Cassani Electric, Inc.*, 2017 VT 17, ¶ 20, 204 Vt. 559. In deciding a motion for summary judgment, the Court will give the non-moving party the benefit of all reasonable doubts and inferences. *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.

Here, Plaintiff does not materially dispute Defendant's SUMF. The Estate also filed its own Statement of Undisputed Material Facts, but does not cite to the record to support those factual allegations. Instead, Plaintiff notes that the facts are based on statements made in Defendant's SUMF or otherwise supported in the record. This is not enough under Rule 56. V.R.C.P. 56(c)(2) ("to the extent that the responding party asserts that there are additional material facts that should be considered, the party may file a separate and concise statement of additional material facts in numbered paragraphs, with specific citations to particular parts of

admissible materials in the record."). However, because the outcome of this case does not change based on those additional facts, the Court considers them for purposes of this decision.

### III. Conclusions of Law

The Estate of Kyle LaBelle has two claims, one for negligence and one for gross negligence. If the negligence claim fails, the gross negligence claim does as well. As such, the Court begins with negligence.

The elements of negligence are (1) duty, (2) breach, (3) causation, and (4) damages. *Kane v. Lamothe*, 2007 VT 91, ¶ 7. The Plaintiff must prove each of these, and without one, their claim fails. The Court focuses on causation.

Causation is made up of two parts: cause-in-fact and proximate cause. Cause-in-fact is also known as but-for causation and requires a plaintiff to show that but for a defendant's act, plaintiff would not have suffered harm. *Palmer v. Furlan*, 2019 VT 42, ¶ 8 ("'But-for' causation 'requires a showing that the harm would not have occurred 'but for' the defendant's conduct such that the tortious conduct was a necessary condition for the occurrence of the plaintiff's harm.'") (quoting *Ziniti v. New England Cent. R.R.*, 2019 VT 9, ¶ 15). Proximate cause looks at whether the injury that plaintiff suffered was due to the defendant's behavior and not the result of an intervening cause. *Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, ¶ 15 (proximate cause "requires a showing that the defendant's negligence was legally sufficient to result in liability in that the injurious consequences flowed from the defendant's conduct and were not interrupted by some intervening cause.") (quotations omitted).

Generally, causation is a question of fact for the jury. However, "it may be decided as a matter of law where the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." *Collins v. Thomas*, 2007 VT 92, ¶ 8. The Estate's claim fails on both aspects of causation, and the Court addresses each in turn.

To carry its burden on cause in fact, the Estate must show by a preponderance of the evidence that "but for" SVPD's alleged failure to recommend an ERPO petition to the State's Attorney, Mr. Mulholland would not have killed Mr. LaBelle.

Taking the facts in the light most favorable to the Estate, the Court assumes for purposes of this motion that, had SVPD relayed the information it had on Mr. Mulholland to the State's Attorney, the State's Attorney's office would have filed an ERPO petition under 13 V.S.A. § 4053(a), and that a court would have granted relief. While the Estate has evidence that the facts in this case would meet the affidavit requirement under the red flag law, it has no evidence to support either of these assumptions.[1] Even on those favorable assumptions, the record cannot support a finding of cause in fact.

---

[1] That could be another potential basis upon which to grant summary judgment, but the Court does not detail this analysis in light of its other conclusions.

First, the encounter between Mr. Mulholland and Mr. LaBelle was a chance street confrontation that the record gives no reason to think an ERPO would have prevented. Mr. Mulholland was walking past Mr. LaBelle's home with two companions when Mr. LaBelle called out to them, walked into the street, and shoved Mr. Mulholland twice. SUMF ¶¶ 5–6. Mr. Mulholland repeatedly attempted to disengage and walk away; the verbal exchange continued, and Mr. LaBelle ultimately stepped toward Mr. Mulholland just before the shots were fired. SUMF ¶¶ 7–9. The two men did not have a prior relationship; Mr. Mulholland did not know Mr. LaBelle's name; no threats had ever been made between them; and there is no record of any prior law enforcement incident involving both. SUMF ¶¶ 13–14.

On those undisputed facts, the Estate cannot show that, absent SVPD's conduct, the chance street encounter and its escalation would not have occurred. An ERPO would have restricted Mr. Mulholland's lawful possession of firearms; it would not have prevented him from walking past Mr. LaBelle's house on Second Street, Mr. LaBelle from approaching him, Mr. LaBelle from escalating the confrontation, or Mr. Mulholland from attacking him with means other than a firearm. Mr. Mulholland was six inches taller than Mr. Labelle and 100 pounds heavier than him. Pl. SUMF, ¶ 24.

Next, even were but-for causation satisfied, the Estate's claim would still fail at proximate cause, which provides the second independent ground on which summary judgment rests. Proximate cause limits a defendant's liability to injuries sufficiently linked to the negligent act to constitute legal causation, and an intervening cause breaks the causal chain when it is unforeseeable. The intentional criminal act of a third party is generally an unforeseeable superseding cause. *Baptie v. Bruno*, 2013 VT 117, ¶ 18.

A defendant may be held responsible for the criminal act of another "only where the defendant had special knowledge or notice upon which to impose a duty to anticipate the wrongful act." *Id*. SVPD had no such notice regarding Mr. LaBelle. Although SVPD was aware of Mr. Mulholland's general volatility and prior threats of self-harm, see SUMF ¶¶ 24–42, the record reflects no awareness of any threat directed at Mr. LaBelle, no prior relationship between the two men, and no reason to anticipate the chance street confrontation that occurred on June 5, 2020 or its rapid escalation. SUMF ¶¶ 13–14.

As in *Baptie*, the intentional criminal act of a third party, here, Mr. Mulholland's deliberate shooting of a man with whom he had no prior connection and whose name he did not even know, broke whatever causal chain might otherwise be traced to SVPD's conduct. See *Baptie*, 2013 VT 117, ¶ 21 (officer had no "reason or duty to anticipate" the fatal encounter between the assailant and specific victim).

While the Court's conclusion on causation is dispositive, it briefly notes that the Estate cannot meet the element of duty, either.

Although raised by the parties in their briefing, the Court does not address the public duty doctrine, which is a shield against liability, because Vermont has rejected the doctrine. See *Hudson v. Town of E. Montpelier*, 161 Vt. 168, 176 (1993) (showing a rejection of the public

duty liability shield, but not creating any new affirmative duty on the government). Instead, the analysis is based on general negligence principles.

The general rule remains that "there is no duty to protect another from the actions of a third person." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 13, 209 Vt. 514; see also Restatement (Second) of Torts § 315 (1965). *Baptie* established a four-factor special-duty test that creates an exception to this general rule. 2013 VT 117, ¶ 19. A plaintiff must meet all four factors. The four factors are: (1) whether a statute sets forth mandatory acts for the protection of a particular class of persons; (2) whether the government has knowledge that particular persons within that class are in danger; (3) whether those persons have relied on the government's representations or conduct; and (4) whether the government's failure to use due care would increase the risk of harm beyond what it was at the time the government acted or failed to act.

In this case, the Estate has sued the Village of Swanton as the government entity that controls the SVPD. 13 V.S.A. § 4053(a), the statute upon which the Estate's theory rests, does not authorize police to file an ERPO petition and uses permissive ("may file") rather than mandatory language. It therefore cannot "set[] forth *mandatory acts* for the protection of a particular class of persons." *Baptie*, 2013 VT 117, ¶ 19 (emphasis added). The Estate cannot meet the third factor either – there is no evidence of reliance by Mr. LaBelle on statements or promises made by the SVPD. Because the Estate cannot meet the *Baptie* factors, its negligence claim fails on the duty prong, as well as the causation prong.

As noted above, the Estate's gross negligence claim cannot succeed if its ordinary negligence claim fails. Gross negligence requires proof of the same elements as ordinary negligence: duty, breach, causation, and damages, but applies a heightened standard requiring that the defendant's conduct fall below "even a slight degree of care." *Hardingham v. United Counseling Serv. of Bennington Cnty., Inc.*, 164 Vt. 478, 482 (1995) (citation omitted). Where, as here, the Estate cannot establish that SVPD's conduct was either a but-for or proximate cause of Mr. Labelle's death, the heightened culpability standard adds nothing to the analysis. Summary judgment is therefore appropriate on Count II as well.

Because the Court grants summary judgment to Defendant on the merits of both the negligence and gross negligence claims, the Court does not reach Defendant's alternative argument that the individual officers are entitled to qualified official immunity. Nor does it reach Defendant's additional arguments.

The facts raised in this case are devastating for Mr. LaBelle's family. A chance encounter in a street between Mr. LaBelle and Mr. Mulholland turned deadly in less than five minutes. The Court grants summary judgment to Defendant because the law does not allow for liability under these circumstances.

## IV.  Order

Based on the analysis above, the Court grants Defendant Village of Swanton's Motion for Summary Judgment.

Electronically signed on June 29, 2026, pursuant to V.R.E.F. 9(d).

_____
Navah C. Spero
Superior Court Judge